UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| TERRY DAWKINS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No. 2:06-CR-20(3) |
| | ) | 2:11-CV-24 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court to consider two pending motions. Terry Dawkins, ("Dawkins" or "Petitioner") has filed a *pro se* motion for reconsideration of the Court's denial of petitioner's previous motion to vacate pursuant to 28 U.S.C. § 2255 on July 21, 2014.[1] [Doc. 564].[2] Petitioner argues that the Court's assessment of his § 2255 motion "rests on an error of law," and seeks reconsideration pursuant to Federal Rule of Civil Procedure 59(e). Petitioner also filed a motion for a certificate of appealability ("COA") on December 28, 2017, [Doc. 659], seeking appellate review of the Court's denial of his § 2255 motion. The government has not responded to either motion. This matter is now ripe for review.

I.  PROCEDURAL HISTORY

A fourteen-count superseding indictment returned by the grand jury on June 13, 2006, [Doc. 9], charged Dawkins in Count One with a conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),

---

[1] Petitioner's motion to reconsider was inadvertently overlooked by the Court until petitioner's subsequent filing for a certificate of appealability in December, 2017.
[2] All references are to docket entries in Case Number 2:06-CR-20(3) unless otherwise indicated.

1

and § 846. Count Two charged Dawkins with a conspiracy to distribute and possess with the intent to distribute fifty grams or more of cocaine base, also in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and § 846. Counts Five and Six charged Dawkins with the aiding and abetting of the distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2.

Dawkins and two co-defendants proceeded to a jury trial. The jury convicted Dawkins on all counts, and Dawkins was subsequently sentenced to 180 months of imprisonment to be followed by a five year term of supervised release. [Doc. 382]. Following his sentencing, Dawkins unsuccessfully appealed his conviction and sentence. *United States v. Young*, 347 F. App'x 182 (6th Cir. 2009), *cert. denied*, 559 U.S. 957 (Feb. 22, 2010). Dawkins timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on January 22, 2011. [Docs. 477 and 478]. That motion was denied by this Court on June 23, 2014. [Doc. 560]. On July 21, 2014, Dawkins' motion for reconsideration of this denial was received by the Court. [Doc. 564]. Dawkins has also filed multiple motions to reduce his sentence, [Docs. 497, 563, 567, 572, and 624]. Each motion was denied by this Court, [Docs. 565, 569, and 639], and on appeal. [Doc. 657]. Dawkins now seeks a certificate of appealability, which would allow him appellate review of this Court's denial of relief under 28 U.S.C. § 2255. [Doc. 659].

## II. STANDARD OF REVIEW

### a. Motion for Reconsideration

The Sixth Circuit treats a motion for reconsideration as a motion to alter or amend the judgment. *See In re Greektown Holdings, LLC*, 728 F.3d 567, 574 (6th Cir. 2013). Federal Rule of Civil Procedure 59(e) allows a party to move to alter or amend the judgment of a court within 28 days of the entry of that judgment. Rule 59(e) relief is available under limited circumstances:

2

(1) to correct a clear error of law, (2) where there is newly discovered evidence, (3) an intervening change in the law has occurred, or (4) to prevent manifest injustice. *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017). It is improper to use such a motion "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (citation omitted). *See also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."). The Court's discretion to grant relief must be used sparingly, as revising a final judgment is an extraordinary remedy. *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014).

### b. Motion for Certificate of Appealability

28 U.S.C. § 2253(c)(1)(B) states that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." Before a COA may be granted, a district court must find that a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). While a COA determination requires "an overview of the claims in habeas petition and a general assessment of their merits," it "does not require full consideration of the factual or legal bases adduced in support the claims. In fact, the statute forbids it." *Id*. Rather, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that

3

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id*. at 338 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**III. ANALYSIS**

At the outset, the Court's previous Order disposing of petitioner's habeas claims made the determination that, under the standard in *Slack*, "reasonable jurists could not conclude that this Court's dismissal of petitioner's claims was debatable or wrong." [Doc. 560 at 44]. The Court therefore denied petitioner "a certificate of appealability as to each claim raised." [*Id*.]. Nonetheless, in light of petitioner's motion for reconsideration and his application for a COA, the Court will take a second look.

Petitioner raises six issues in his motion for reconsideration which he alleges were incorrectly decided by the Court's denial of his § 2255 motion. [Doc. 564]. Petitioner repeats most of these arguments in his application for a COA. [Doc. 659]. All arguments raised in both motions were raised in petitioner's original § 2255 motion, and were fully addressed in this Court's Order denying relief. [Doc. 560]. The Court will review each raised issue for reconsideration and/or availability for a COA.

**a. Suppression of Wiretap Evidence**

Petitioner argues that "this Court's assessment of his ineffective counsel claim, surrounding Wyss's failure to move for suppression of wiretap evidence, rests on an error of law." [Doc. 564 at 2]. Specifically, Petitioner claims that the Court's reliance on the affidavit submitted in support of the wiretap did not satisfy the necessity requirement in 18 U.S.C. § 2518(1)(c), as it related only to his co-defendant, Rickey Story. [*Id.* at 3]. Petitioner, as he does in his § 2255 motion, cites to *United States v. Rice*, 478 F.3d 704 (6th Cir. 2006) for the proposition that "the

4

protections of § 2518 are directed at individuals, not groups." [*Id.* at 2].³ In denying petitioner's § 2255 motion, this Court found that *Rice* was inapposite to the case at bar:

> In *Rice*, the affidavit for the Title III order stated that the agents who were applying for the authorization for a wiretap had conducted surveillance and had reason to believe the subjects were violent, had used threats of violence, and carried firearms. The *Rice* court found that no surveillance had been conducted and no evidence obtained which confirmed that the subjects of the wiretap carried a firearm and that the affidavit was false. *Rice* is factually distinguishable from petitioner's case. Here, the affidavit Chambers submitted in support of the wiretap order stated that an investigation had been conducted, that surveillance methods had been employed, and that a CI had been used to engage in controlled buys, some of which had been recorded. There is no suggestion in the record, beyond petitioner's unsupported contention, that the Chambers affidavit, which supported the wiretap order, contained any misstatements or omissions.

[Doc. 560 at 14-15]. Further, while *Rice* certainly discusses the necessity requirement for wiretaps, it does not, in fact, hold that such protections are directed at individuals rather than groups. As he cannot present any additional evidence on this point, his claim based on *Rice* remains meritless.

Petitioner also cites to *United States v. Carneiro*, 861 F.2d 1171 (9th Cir. 1988), in which the Ninth Circuit found that the government "may not dispense with the necessity showing with regard to one conspirator simply because it has proved necessity in the case of another." 861 F.2d at 1181 (citing *United States v. Brone*, 792 F.2d 1504, 1507 (9th Cir. 1986)). Petitioner is correct that *Carneiro* found that the government failed to demonstrate necessity in its wiretap applications for two out of the three defendants it sought to further investigate. However, it does not limit the use of evidence obtained in a valid wiretap against co-conspirators or third parties. In fact, the court in *Carniero* allowed evidence discovered through a valid wiretap to be admitted against a co-conspirator, even as it related to separate drug activity. *Id.* at 1179. "Once a wiretap order

---

³ Petitioner actually cites to the district court decision from the Western District of Kentucky for this proposition, but that opinion did not deal with the necessity requirement, nor does it analyze § 2518. Therefore, the Court presumes that petitioner intended to base his argument on the *Rice* opinion authored by the Sixth Circuit on appeal.

5

satisfied the particularity requirements of the fourth amendment and Title III, it may be formulated in a manner 'broad enough to allow interception of *any* statements concerning a specified pattern of crime.'" *Id.* (citing *United States v. Licavoli*, 604 F.3d 613, 620 (9th Cir. 1979)).

A motion to suppress the evidence procured through the wiretap on these bases would not have been successful at trial, and counsel has no duty to assert a legally baseless claim. *See United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002). Petitioner therefore fails to demonstrate that trial counsel was ineffective, and cannot establish an error of law in the analysis of the Court's opinion denying his § 2255 motion. His request for reconsideration on this point is meritless.

### b. Failure to Negotiate or Communicate Government's Plea Offer

Petitioner seeks reconsideration of the Court's finding that "petitioner has not demonstrated a reasonable probability that he was ready to accept any plea offer, under terms which were certain to be included, rather than one containing terms scripted to his liking." [Doc. 560 at 20]. Petitioner raises two arguments in this section: (1) that his attorney was ineffective when he "failed to communicate the Government's plea offer prior to trial," and (2) that the Court committed an error of law by assuming that petitioner would not have accepted the Government's plea offer. [Doc. 564 at 4]. Petitioner's motion for a COA presents the contradictory argument that "counsel advised [petitioner] that a plea offer was available," but that petitioner was not inclined to take the offer because it would require his cooperation against his codefendants. [Doc. 659 at 14].

The first argument raised for reconsideration is fully analyzed in the Court's previous order. Petitioner again cites to *United States v. Griffin*, 330 F.3d 733 (6th Cir. 2003), but the Court has already found the case "distinguishable on its facts." [Doc. 560 at 19]. In *Griffin*, a plea deal was offered by the government but not communicated to a defendant; no such showing has been made in this case. The Court found that "there is nothing to indicate that plea negotiations were

6

in the offing." [*Id.*]. Petitioner's motion for a COA clarifies the situation by admitting that counsel did in fact communicate the plea offer to him. On this argument, petitioner does no more than restate the arguments he made in his § 2255 motion, and thus has not established a clear error of law requiring reconsideration or correction.

His second argument is that the Court improperly assumed that petitioner would not have accepted a plea agreement from the government, and thus relied on an error of law: "In the absence of the Government's plea agreement, this [C]ourt is unable to determine whether petitioner would have accepted the offer and its' reliance on [p]etitioner's previous declarations of innocence does not constitute grounds for its' previous determination." [Doc. 564 at 4]. The related argument raised in his motion for a COA is that his attorney's inability to secure an agreement which would not require cooperation against his codefendants represented inadequacy in pursuing plea negotiations. [Doc. 659].

Petitioner's argument on this point is also ill-fated. First, petitioner has no right to the offer of a plea agreement from the government. *Missouri v. Frye*, 566 U.S. 134 (2012). Petitioner stated that he "expressed he would accept a plea without cooperation for his role," but he is not entitled to such a plea when it is not offered by the government. Second, petitioner's attorney submitted an affidavit which stated that "[a] plea of guilty was recommended but Petitioner was not so inclined[.]" [Doc. 528-2 at 2]. It appears that petitioner's trial counsel communicated that a plea agreement was likely the most favorable outcome for the petitioner, but that it was Dawkins himself that was not inclined to plead guilty. The record also reflects petitioner's unequivocal choice. The transcript of a motion hearing held two days before petitioner's trial includes the following testimony by the petitioner: "I ain't asked for no plea. I ain't asking for no plea. I want to go to trial and fight for my life." [Doc. 443 at 11].

7

Petitioner, as he does in his § 2255 motion, cites to *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), which held that "[p]rotestations of innocence throughout the trial are properly a factor in the trial court's analysis, however they do not, by themselves, justify summary denial of relief without an evidentiary hearing." 348 F.3d at 552. The court in *Smith* continued to explain:

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.* Petitioner did not merely protest his innocence: he unequivocally stated that he did not want a plea agreement, but wanted to proceed to trial. It appears from his attorney's affidavit that counsel suggested pursuing a plea, but that petitioner was not so inclined. The Court properly concluded that the record does not indicate that counsel failed to communicate a plea, and that, even if a plea agreement was offered, petitioner could not demonstrate that he would have accepted it. In fact, defendant's own statements indicate that he was uninterested in a plea agreement, insisting instead on proceeding to trial against his attorney's recommendation. Petitioner presents no new evidence, nor does he attempt to establish an error of law, but simply relitigates the claims in his original motion. His claim for reconsideration on this point is without merit.

Neither can petitioner demonstrate the substantial showing of the denial of a constitutional right, which is required before the Court can grant a COA to the petitioner. Petitioner's motion for a COA clarifies that counsel communicated the plea offer to him. Petitioner is not otherwise constitutionally entitled to a plea agreement, particularly one that suits each of his preferences. Petitioner's request for a COA on this claim is likewise without merit.

### c. Breakdown in Attorney/Client Relationship

8

Petitioner's motion for reconsideration discusses the breakdown of his relationship with his trial attorney under the heading of "Conflict of Interest." [Doc. 564 at 5]. Petitioner argues that "Wyss represented conflicting interests that adversely affected his performance during trial." [*Id.*]. Petitioner references his reply filing in his § 2255 proceedings, which states that an "actual conflict" arose when his attorney "failed to investigate the Government's wiretap evidence, . . . did not investigate any potential witnesses that would have provided exculpatory evidence on Dawkins' behalf, . . . [and] failed to advise Dawkins of the Government's plea offer." [Doc. 529 at 11]. These are separate claims for ineffective assistance of counsel which petitioner raised and continued to raise elsewhere in his motions, and do not represent a conflict of interest. Therefore, petitioner's request that the Court "consider each conflict of interest claim on its own merits" is nonsensical, as the petitioner does not allege any conflicts of interest. As it relates to the complaints listed, each claim is individually discussed herein.

Petitioner's motion for a COA states that he was "forced to go to trial with an attorney with whom he could not effectively communicate due to complete breakdown of the Attorney-Client relationship." [Doc. 659 at 17]. Petitioner claims that the Court's inquiry at the hearing on Dawkins' motion to substitute counsel was "perfunctory." [*Id.* at 18]. This issue was raised by the petitioner in his § 2255 motion—in fact, the section is copied nearly word for word. [*See* Docs. 478 at 10-12; 659 at 17-18]. This claim was therefore fully considered and discussed in the Court's order denying petitioner's § 2255 motion:

> An indigent criminal defendant has a right to counsel, but not an absolute right to counsel of his choice; therefore, to warrant substitution of counsel, the defendant must show 'good cause.' At the conclusion of the motion hearing, the Court determined that Dawkins's complaints about counsel were legally baseless and, in effect, found that he had failed to show 'good cause' to relieve Attorney Wyss from the representation. This claim, now raised as an instance of ineffective assistance, is likewise groundless and merits no relief.

9

[Doc. 560 at 22-23 (citations omitted)]. A review of the transcript from the hearing on petitioner's motion for new counsel indicates that the undersigned questioned the petitioner thoroughly about his reasons for the motion, and that petitioner stated that (1) he did not "feel effective counsel," (2) he did not receive certain paperwork until the week of trial, (3) his counsel would not send him a copy of the Federal Rules of Criminal Procedure, (4) he was unhappy that a paralegal accompanied his attorney to their meetings, and (5) that he wanted to "hear something positive." [Doc. 443]. The undersigned concluded: "you've given me nothing this morning that indicates that Mr. Wyss has … not represented you properly. If there's any breakdown in communication here, it's because you're refusing to talk to Mr. Wyss. I don't have anything to work with here, Mr. Dawkins." [*Id.* at 12]. It is clear, therefore, that petitioner did not show good cause to relieve Mr. Wyss.

Further, although petitioner claims in his motion for a COA that counsel "sabatoged[sic] and abandoned Defendant in his trial proceeding that came after his complaint and Motion to the District Court to relieve him," the record indicates otherwise. During trial, petitioner addressed the Court, saying: "You told me on Monday [at the hearing on the *pro se* motion to remove counsel], also, that [Mr. Wyss] was a good guy. He was going to represent me to the fullest, and I appreciate that. I didn't see that at first. I thought the wool was in my eyes. I appreciate what you're doing; and I appreciate his counsel, too." [Trial Transcript Vol. IV, Doc. 360 at 49].

Petitioner has presented nothing in his motion for a COA to demonstrate that he was deprived a substantial constitutional right, nor did he attempt to demonstrate in his motion for reconsideration that the Court relied on an error of law. His claims on this argument are baseless.

### d. Failure to Investigate Eye-Witness and Failure to Move for Severance
#### i. *Failure to Investigate Eye-Witness*

Petitioner's motion for reconsideration argues that the Court improperly denied his § 2255 motion in part because the Court "never made any findings on whether this testimony would have been helpful to Petitioner's defense," and did not consider "whether it was objectively unreasonable for Wyss not to interview Grooms and Young before coming to his ultimate choice of trial conduct." [Doc. 564 at 6]. He claims that the Court's opinion "is unclear on whether there is a reasonable probability that the testimony of Grooms and Young would have undermined the Government's case and resulted in a different outcome." [*Id.*].

These statements, however, are simply incorrect. The Court's opinion states:

> The record refutes that there is any reasonable probability that testimony from Grooms would have . . . changed the outcome of Dawkins's trial. This is so because, in fact, Grooms took the stand, testified in her own defense, and was subjected to cross-examination by Dawkins's attorney. Petitioner has not set forth the contents of the testimony Grooms would have offered from the witness stand, had counsel successfully moved to sever Dawkins's trial from hers, and he has not shown that any such testimony would have been different from what she, in fact, gave at the trial nor that it would have been favorable to his defense. The lack of such showing defeats this particular claim. . . .
>
> As for the alleged failure of counsel to call Young as a witness for the defense, Dawkins has submitted what he had titled as an 'affidavit' by Young, in which Young states, *inter alia*, that he did not know Dawkins, that he wanted to testify, and that he would have testified, had Dawkins's trial be severed from his. . . . In considering the 'affidavit,' the Sixth Circuit noted that, while the document stated that Dawkins was duly sworn, it was not notarized and did not otherwise show that Dawkins was administered an oath by an authorized person . . . . The Sixth Circuit went on to hold that, even if it credited Dawkins's 'affidavit' denying that he knew Young, the document would not likely have resulted in an acquittal. The very same flaws exist with respect to Young's 'affidavit' presented in the instant case.

[Doc. 560 at 28-29]. It is clear, therefore, that the Court made a finding as to each co-defendant that their testimony would not have been helpful to the petitioner's defense. Because defense counsel has no obligation to call or interview witnesses whose testimony would not exculpate petitioner, the Court found this claim to be without merit. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). Petitioner presents nothing to change this analysis.

### ii. Failure to Move for Severance

Petitioner argues in his motion for reconsideration that the Court committed a "misstep" when analyzing petitioner's severance claim. "In particular, when determining whether there was a reasonable probability of a different outcome, this [C]ourt constructed strategic defenses that were not offered by Wyss." [Doc. 564 at 8]. Petitioner continues:

> Despite the weight of evidence supporting the Government's case, it is unreasonable to assume that leaving Petitioner hamstrung without the support of available material and impeaching witnesses in the swearing contest between the Government and Petitioner did not prejudice his case. Here, this Court's assessment of petitioner's claim rests on an unreasonable application of the *Strickland* standard and reflects a clear error of law as this Court's opinion has only state[d] its view that there is not a reasonable probability that the jury would believe the testimony and change its verdict.

[*Id.* at 9 (citing *Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. 2007))]. Petitioner's arguments as to why severance was necessary all relate to the alleged prejudice resulting in Grooms' and Young's lack of testimony in his defense at trial.

Petitioner relies on *Ramonez* for his argument that the jury should have had the opportunity to make credibility determinations about Grooms' and Young's testimony, and that counsel's failure to call them as witnesses constituted ineffective assistance under *Strickland*. The Sixth Circuit found in *Ramonez* that an attorney who recognized the possibility that certain witnesses could provide testimony beneficial to his client acted unreasonably by not at least making reasonable efforts to interview those witnesses before determining his trial strategy. 490 F.3d at 489. However, here, the testimony about which petitioner complains is that of co-defendants in his case, who, as discussed above, could not aid Dawkins in his defense. Although credibility determinations are certainly reserved for a jury, a judge "is not required to sever on patent fabrications. If the testimony is purely cumulative, or of negligible weight or probative value, the court is not required to sever." *Byrd v. Wainwright*, 428 F.2d 1017, 1021 (5th Cir. 1970).

Although petitioner claims that this Court "only state[d] its view that there is not a reasonable probability that the jury would believe the testimony and change its verdict," [Doc. 564 at 9], the Court in fact provided three pages of analysis on petitioner's severance claim. The Court found (1) the Court would not have granted the motion to sever had counsel raised it, (2) petitioner's trial counsel acted reasonably and strategically in his decision not to move for severance, and (3) even if such a motion was granted, it would not have changed the outcome of the case. [Doc. 560 at 31]. In regards to his argument for a severance, petitioner has failed to establish that the Court relied on an error of law.

e. **Deprivation of the Right to Testify**

Petitioner claims that "this Court made an error of law when it assessed the merits of his claim from the record, despite off the record evidence demonstrating that Petitioner was coerced into waiving his right [during a recess with counsel]. . . . Here, this Court failed to determine whether the advice during the 'recess' was objectively reasonable." [Doc. 564 at 9]. Petitioner is correct that the record in this case clearly indicates that petitioner openly and knowingly waived his right to testify:

> THE COURT: All right, Mr. Wyss. Are we ready to go forward?
>
> MR. WYSS: We are, Your Honor. Mr. Dawkins rests at this point and will not be taking the witness stand.
>
> THE COURT: All right, Mr. Dawkins?
>
> MR. DAWKINS: Yes, Sir.
>
> THE COURT: I've given you a bit of time to talk to your attorney, and you've decided to listen to his advice; is that correct?
>
> MR. DAWKINS: I plead the 5th, Your Honor.
>
> MR. WYSS: That means you will not testify?

> MR. DAWKINS: I'm not testifying.
>
> THE COURT: All right. You're comfortable with that decision?
>
> MR. DAWKINS: I'm very comfortable with what I'm saying.

[Trial Transcript Vol. IV, Doc. 360 at 51]. At trial, therefore, petitioner thrice affirmed his intention not to testify. The fact that this colloquy came after petitioner's initial expression of his desire to testify does not change the fact that he subsequently affirmed his knowing decision not to testify after consulting with his attorney.

As it concerns the off-the-record conference between the petitioner and his attorney, petitioner provides insight into that conversation in his § 2255 motion:

> Defense attorney Wyss advised Movant that his testimony would bring[ ]out unspecified evidence/testimony by the prosecution; that Movant's testimony would hurt co-defendant's case; that Movant's testimony was not required for Movant to get his side of [the] story before the [the] jury, because Counsel would do that during closing arguments; that Movant would not be able to testify to what he wanted; that Movant could not testify because Counsel had not anticipated and prepared for Movant to testify; and Movant could not testify because it would 'destroy the case' and result in Movant getting convicted.

[Doc. 478 at 18]. The Court's order considered this advice described by the petitioner and categorized it, properly, as "the strategic implications of taking the stand." [Doc. 560 at 35]. Petitioner does not present additional evidence or information on his motion for reconsideration regarding the conversation during this recess, but simply continues to claim that counsel's warnings amounted to coercion. They do not.

Petitioner also raises this argument in his motion for COA. His only new argument concerns the legal principle that "when a defense attorney makes a strategic decision not to have the criminal accused testify, defendant's assent in presumed." [*Id.* at 34 (citing *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000))]. Petitioner presumably claims that because he alerted the Court to the "rancorous and irreconcilable relationship" between petitioner and counsel prior

14

to trial, that the Court should not have credited petitioner's waiver of his right to testify after conferring with his attorney. [Doc. 659 at 12-13]. However, at trial, petitioner stated that he understood that Mr. Wyss "was going to represent me to the fullest, and I appreciate that. I didn't see that at first. I thought the wool was in my eyes. I appreciate what you're doing; and I appreciate his counsel, too." [Trial Transcript Vol. IV, Doc. 360 at 49]. This statement preceded the recess in which petitioner discussed his decision to testify with counsel. Therefore, petitioner's statement at trial controverts his current argument that the Court should have been on notice that his relationship with Mr. Wyss was irreconcilable. Petitioner cannot demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### f. Due Process Violation

The final claim presented in petitioner's motion to reconsider briefly states that the Court erred in concluding that Field's "affidavit" would not have resulted in an acquittal at trial rather than conducting an evidentiary hearing to determine whether his trial counsel was ineffective for choosing not to interview Fields. [Doc. 564 at 10]. Other than objecting to the Court's decision not to hold a hearing on petitioner's § 2255 motion, petitioner presents no additional information, evidence, or argument to dispute the Court's analysis. The Court found that the "affidavit" by Fields was neither notarized, administered under oath, nor otherwise adherent to the requirement for an unsworn statement under penalty of perjury, and concluded that its introduction as trial "would not have produced an acquittal." [Doc. 560 at 42-43]. Therefore, counsel was not ineffective for his unwillingness to pursue this line of inquiry before the jury. Petitioner does not present an argument that the Court's conclusion rested upon an error of law, other than stating his belief that further evidentiary proceedings were necessary on the issue. "A motion under Rule

15

59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Petitioner's argument on this issue is simply a restatement of his earlier claim and remains without merit.

### g. Racial Composition of Jury Venire

Petitioner's motion for a COA argues that petitioner "was denied effective assistance of counsel when counsel failed to challenge the racial composition of the jury venire from which defendant's petit jury was drawn." [Doc. 659 at 18-19]. Petitioner claims that he was prejudiced because "every member of the [j]ury [was] of the Caucasian race," and that his jury therefore did not represent a fair cross-section of the community where the trial took place. [*Id.*].

The Court's order denying petitioner's § 2255 motion fully analyzed this issue and found that the claim was without merit. [Doc. 560 at 9-13]. The Court remains convinced that on this issue petitioner cannot demonstrate a substantial showing of the denial of a constitutional right, which is required before the Court would issue a COA. As the Court explained, to establish a violation of the fair-cross-section requirement, petitioner must prove (1) a group qualifying as "distinctive" (2) is not fairly and reasonably represented in jury venires, and (3) "systematic exclusion" in the jury selection process accounts for the underrepresentation. *Berghuis v. Smith*, 559 U.S. 314, 327-28 (2010) (citing *Duren v. Mississippi*, 439 U.S. 357, 364 (1979)). While petitioner is correct that African-Americans in the Eastern District of Tennessee ("EDTN") constitute a recognized and distinctive group, he cannot satisfy the remaining two prongs of the test in *Duren*.

The jury selection process of the EDTN, which would have been in place at the time of petitioner's trial, has already been upheld by the Sixth Circuit Court of Appeals in *United States v. Miller*, 562 F. App'x 272 (6th Cir. 2014):

> As to the degree of underrepresentation of African-Americans and minorities, the record contains an affidavit by the chief deputy clerk of the Eastern District of Tennessee, as ordered by the court, that explains the jury selection process and includes reports detailing the demographic make-up of the jury pool in the district's Northeastern Division in 2005 and 2009. According to this reports—filed pursuant to 28 U.S.C. § 1863(a)—in 2005, African-Americans comprised 1.86 percent of the qualified jurors in the master jury wheel filled and 2.2 percent of the general population of voting age in the division. . . . The easiest way [to compare the numbers] is to look at the simple difference between the percentage of African-Americans in the jury wheel and in the general population. This difference was less than one percent . . . . This underrepresentation is lower than rates of underrepresentation found to be substantial by the Supreme Court. The underrepresentation is even less substantial when taking into account the relatively small size of the overall population of African-Americans in the area.

*Miller*, 562 F. App'x at 280-81 (citations omitted). Petitioner cannot demonstrate that African-Americans were not fairly or reasonably represented in the 2005 jury venire in the EDTN, which indeed represented the population within one percent. Other than to challenge the affidavit which the Sixth Circuit credited in *Miller*, petitioner does not otherwise attempt to show that African-Americans were being systematically excluded from jury venires.

Petitioner cannot argue that he was denied a constitutional right, nor can he demonstrate that a reasonable jurist may conclude that his claim "is adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). He simply cannot establish the elements required to support his claim. This argument, too, is without merit.

### h. Failure to Hold a Hearing on Petitioner's § 2255 Motion

Finally, petitioner argues in his motion for a COA that the Court violated petitioner's constitutional rights when it summarily denied petitioner's § 2255 motion without holding a fact-finding hearing. Petitioner states that the Court's "decision not to conduct an evidentiary hearing in Defendant's case was clearly and convincingly contrary to Supreme Court authority as enunciated in *Fontaine v. United States*, 411 U.S. 213, 215 (1973)[.]" [Doc. 659 at 6]. Petitioner is correct that *Fontaine* held that a motion pursuant to § 2255 "calls for a hearing on such

allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 411 U.S. at 215. In this case, as was clearly and thoroughly explained by the Court in its order denying petitioner's § 2255 motion, the motion, files, and records of petitioner's case conclusively demonstrate that he is entitled to no relief. [Doc. 560 at 5]. The Court has now addressed petitioner's motion for reconsideration of his § 2255 motion, and confirmed that petitioner's claims are without merit. For that reason, there is no need for an evidentiary hearing in this matter. *See Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## IV. CONCLUSION

For the reasons stated herein, petitioner's motion for reconsideration, [Doc. 564], and his application for a COA, [Doc. 659], are **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
